FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 07, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARLA DARTORA, A# 088-469-583,<br><br>           Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; MERRICK GARLAND, United States Attorney General; ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security; TRACY RENAUD, Director of the United States Citizenship and Immigration Services; SUSAN DIBBINS, Acting Chief, Administrative Appeals Office; CONNIE NOLAN, Associate Director, Service Center Operations,<br><br>           Defendants. | No.   4:20-cv-05161-SMJ<br><br>**ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Before the Court is the United States' Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 22. The United States moves to dismiss for failure to state a claim, arguing that Plaintiff did not sue within the statute of limitations or, in the alternative, that Plaintiff does not state a claim that the Administrative Appeals Office (AAO) did not arbitrarily and capriciously deny Plaintiff relief. The

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 1

Court previously dismissed Plaintiff's original Complaint, determining that the BIA did not have jurisdiction to decided Plaintiff's appeal and that Plaintiff did not timely file this action. ECF No. 20. The Court granted leave to amend to state a claim for entitlement to equitable tolling. *Id.* at 11. Plaintiff filed her Amended Complaint, and this motion followed. ECF Nos. 21, 22. Having reviewed the record in this matter, the Court is fully informed and denies the motion to dismiss.

## FACTS ALLEGED BY PLAINTIFF

Plaintiff is a native and citizen of Brazil who married a United States citizen on August 31, 2006. ECF No. 21 at 4. Her husband, Chris, was abusive and spent portions of their relationship in jail. *Id.* at 7–9. Plaintiff lived with Chris for a few weeks in April 2004, as well as from May 2005 until March 2006. *Id.* at 7–8.

Plaintiff filed a Form I-360 with the United States Citizenship and Immigration Services (USCIS) Vermont Service Center (VSC), which alleged that she was a battered immigrant spouse under Section 204(a)(1)(A)(iii) of the Immigration and Nationality Act (INA) and the Violence Against Women Act (VAWA). ECF No. 21 at 4. VSC denied her petition. *Id.* at 10. Plaintiff appealed to the AAO, within USCIS, which dismissed her appeal on August 2, 2011. *Id.* at 11–12.

Plaintiff then tried to appeal the AAO's decision to the Board of Immigration Appeals (BIA), the appellate board within the Department of Justice. *Id.* at 13. After

several form denials, the BIA issued a letter decision dismissing the appeal for lack of jurisdiction on April 14, 2015. *Id.* at 13–15.

At that point, Plaintiff's former counsel "presented Plaintiff with the possibility of judicial review by federal court for the first time." *Id.* at 15. But she did not notify Plaintiff of any statute of limitations. *Id.* On August 25, 2016, former counsel told Plaintiff she would file her appeal "within the next few weeks." *Id.* On November 14, 2017, she asked Plaintiff if she still wanted to pursue an appeal. On December 15, 2017, she "again reassured Plaintiff that the appeal would be submitted after '[the following] week.'" *Id.* From that time until June 2018, former counsel did not respond to Plaintiff's requests for updates. *Id.* In June, she "promise[d]" to file the appeal by "the end of next week or early the following week." *Id.* In October 2018, former counsel left her firm and arranged to continue as pro bono counsel for Plaintiff. *Id.* at 16. In March 2019, former counsel "confirmed" that the appeal was "95% complete." *Id.* In April, she stated that she was working with other attorneys on similar cases. *Id.* That was the last time former counsel contacted Plaintiff.

In February 2020, Plaintiff conducted research and discovered the applicable statute of limitations. *Id.* She contacted former counsel and asked her to respond within a week. *Id.* She did not. *Id.* Plaintiff asked former counsel to return her file

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 3

to her former law firm, who then worked with Plaintiff to file the instant action on September 15, 2020. *Id.* at 16–17; *see also* ECF No. 1.

## LEGAL STANDARD

Under Rule 12(b)(6), the Court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted," including when the plaintiff's claims either fail to allege a cognizable legal theory or fail to allege sufficient facts to support a cognizable legal theory. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). The Court may dismiss a complaint based on an affirmative defense when the "allegations in the complaint suffice to establish" the defense. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citations omitted); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (When the running of the statute is "apparent on the face of the complaint, the defense may be raised by a motion to dismiss."). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility exists when a complaint pleads facts permitting a reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Plausibility does not require probability but demands something more than a mere possibility of liability. *Id.* While the plaintiff

need not make "detailed factual allegations," "unadorned" accusations of unlawful harm and "formulaic" or "threadbare recitals" of a claim's elements, supported only "by mere conclusory statements," are insufficient. *Id.*

In deciding a Rule 12(b)(6) motion, the Court construes a complaint in the light most favorable to the plaintiff, assumes the facts as pleaded are true, and draws all reasonable inferences in his or her favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011); *Iqbal*, 556 U.S. at 678. Even so, the Court may disregard legal conclusions couched as factual allegations. *See id.* In ruling on a motion to dismiss, the Court may consider materials "attached to the complaint" without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

**A.    Plaintiff has pleaded additional facts which state a claim for entitlement to equitable tolling**

As explained in the Court's previous Order, ECF No. 20, every "civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of the action first accrues." 28 U.S.C. § 2401(a). Challenges to agency decisions under the APA are subject to this general six-year limitations period. *Perez-Guzmen v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016). The final agency decision from which the Court must calculate the limitation period

is the AAO's August 2, 2011 decision. *See* ECF No. 21 at 11–12; *see also Herrara v. U.S. Citizenship and Immigr. Servs.*, 571 F.3d 881, 885 (9th Cir. 2009). The statute of limitations, without any tolling, thus expired on August 2, 2017, and Plaintiff did not file this action until September 15, 2020.

Equitable tolling is "unavailable in most cases." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *see also Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990) (courts apply the doctrine of equitable tolling "sparingly."). "[T]he threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule." *Miranda*, 292 F.3d at 1066 (internal quotation and citation omitted). To establish equitable tolling, Plaintiff must show "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in her way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

"[A]ll one need show is that by the exercise of reasonable diligence the proponent of tolling could not have discovered the essential information bearing on the claim." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184–85 (9th Cir. 2001). Courts may toll deadlines "because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Lona v. Barr*, 948 F.3d 1225, 1230-32 (9th Cir. 2020) (quoting *Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003)). "[M]aximum diligence possible" is not required, only "due" or "reasonable" diligence. *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011).

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 6

Further, an "extraordinary circumstance" must be outside the litigant's control. *Menominee Indian Tribe of Wisc. v. United States*, 136 S. Ct. 750 (2016). Mistake of law alone is not an "extraordinary circumstance." *See Weaver v. Alameida*, 225 Fed. App'x 598, 599 (9th Cir. 2007); *see also Torres v. County of Lyon*, 3:07-CV-538-RAM, 2009 U.S. Dist. LEXIS 29394, at *20 (D. Nev. Mar. 31, 2009). And while "a garden variety claim of excusable neglect . . . does not warrant equitable tolling, . . . more serious instances of attorney misconduct" may. *Holland v. Florida*, 560 U.S. 631, 652 (2010) (reasoning that repeated ethical violations, including ignoring client communications, may constitute an extraordinary circumstance which warrants equitable tolling); *see also Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011) ("Equitable tolling may be warranted in instances of unprofessional attorney behavior"). Courts may consider factors like counsel's ethical obligations and jurisprudence on counsel's conduct in similar areas of law. *Nehad v. Mukasey,* 535 F.3d 962, 970 (9th Cir. 2008). "[A]ffirmatively misleading a petitioner to believe that a timely petition has been or will soon be filed can constitute egregious professional misconduct." *Luna v. Kernan*, 784 F.3d 640, 647 (9th Cir. 2015).

In cases like Plaintiff's, courts have applied equitable tolling. For example, in *Avagyan*, counsel met with the petitioner only a few times and did not advise him of filing requirements. 646 F.3d at 676. The court reasoned that the petitioner

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 7

reasonably relied on prior counsel because "a lay person reading the BIA's denial of [her] appeal would not know that a final order of removal had issued." *Id.* at 681–82 ("Given the long delays in our immigration system, a year-long wait for adjudication of a visa application does not evidence a lack of diligence."). Likewise, in *Iturribarria v. INS*, 321 F.3d 889, 897–98 (9th Cir. 2003), the court reasoned an attorney's fraudulent acts may entitle the petitioner to equitable tolling. There, petitioner's attorney, failed to communicate what documents he needed to produce, failed the wrong motion, missed deadlines, and executed a false affidavit blaming petitioner for the untimeliness. *Id.* at 898. The court explained that "ineffective representation, combined with deceptive behavior that misled petitioners into believing that their representatives were proceeding effectively and appropriately, justified equitable tolling." *Id.* (discussing *Rodriguez-Lariz v. INS*, 282 F.3d 1218 (9th Cir. 2002)). "One reason that aliens like Mr. Iturribarria retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration proceedings so complicated." *Id.* at 901. The court concluded that petitioners "cannot be precluded from demonstrating ineffective assistance of counsel because he reasonably relied upon and assumed his counsel's competence." *Id*. These cases together stand for the proposition that petitioners may, reasonably, place trust in their lawyers.

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 8

Plaintiff's Amended Complaint, ECF No. 21, states additional facts which give rise to a claim for equitable tolling. Not only did her prior attorney continually represent to Plaintiff that she must file her appeals with the BIA, when she finally informed Plaintiff of the possibility of judicial review, she failed to explain the statute of limitations. *See* ECF No. 21 at 13–16. What's more, her attorney repeatedly assured Plaintiff that the district court appeal was in process and would be filed soon. *Id.* at 15–16. When she was not making seemingly false assertions, she ignored Plaintiff's inquiries. *Id.* True, Plaintiff eventually conducted her own research to determine the applicable statute of limitations. *Id.* at 16. But her attorney gave her repeated assurances that she was handling the appeal, and even a paralegal—especially a paralegal without experience in immigration law—may reasonably rely on such assurances. *See Iturribarria*, 321 F.3d at 901. Just because Plaintiff eventually did her own research does not undermine her case for equitable tolling. She retained her attorney so that she would not need to wade through the immigration system herself. *See* ECF No. 25 at 11–12; *see also Avagyan*, 646 F.3d at 679. Once her trust in her attorney waned, she acted with diligence in investigating her claim.

Prior counsel made more than a mistake regarding the proper forum for appeal—she ignored and misled her client until her rights had slipped away. *Cf.* ECF No. 26 at 5. And Plaintiff diligently contacted counsel to try to ensure her case

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 9

was progressing. Defendants argue that this case is distinguishable from other cases in which equitable tolling applied "because in the present case, she had repeated contact with her attorney and was kept apprised of the decisions being made on her case." ECF No. 26 at 4. Was Plaintiff *too* diligent by trying to contact her attorney? Defendants' argument puts Plaintiff in a Catch-22 and thus oversimplifies the equitable tolling doctrine. This Court finds that Plaintiff's Amended Complaint states a claim for equitable tolling. To find otherwise would render equitable tolling relief illusory.

### B. Plaintiff states a claim that the AAO's decision was arbitrary and capricious

The Administrative Procedure Act (APA) directs district courts to "hold unlawful and set aside" an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that is taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). Courts must reject "[c]onstructions that are contrary to clear Congressional intent or frustrate the policy that Congress sought to implement." *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 765 (9th Cir. 2007). And agency action that is not the product of reasoned decision making is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency must "cogently explain why it has exercised its discretion in a given manner." *Id.* at 48.

Under this standard, courts "do not substitute [their] judgment for that of the agency." *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012) (internal quotations omitted).

The statute provides that an abused spouse is eligible to relief under an I-360 petition when, as relevant here, they are "the spouse of a citizen of the United States" and have "resided with the alien's spouse or intended spouse" and "during the marriage" they have "been battered or [have] been the subject of extreme cruelty perpetuated by the alien's spouse." 8 U.S.C. § 1154(a)(1)(A)(iii)(II). The AAO rejected Plaintiff's petition because although she had resided with her abuser *in the past*, she had not resided with him during the span of their marriage. ECF No. 21 at 11–12. Plaintiff argues that this is not fatal to her petition; that she need only show that she lived with her abuser at some undefined time. *Id.* at 12; ECF No. 25 at 14–20. Defendants disagree, arguing that they must have lived together while they were married. ECF No. 22 at 9–15.

District courts which have addressed this issue have adopted the interpretation advanced by Plaintiff. *See Bait It v. McAleenan*, 410 F. Supp. 3d 874 (N.D. Ill. 2019); *Hollingsworth v. Zuchowski*, 437 F. Supp. 3d 1231 (S.D. Fla. 2020). This Court now joins them.

Statutory analysis begins "with the text of the statute and with a presumption that Congress intended that the words used be given their plain and ordinary

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 11

meaning." *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). Defendants argue that the term "spouse" in the phrase "has resided with the alien's spouse or intended spouse" shows that Congress intended the petitioner and the abuser lived together *while* they were spouses, i.e., during their marriage. ECF No. 22 at 10. But "the word 'spouse' is a descriptor used throughout [the statute] to refer to the U.S. citizen-abuser." *Bait-It*, 410 F. Supp. 3d at 878. It merely identifies the person—it does not "demand that the person have that legal status at every moment in time referring to that person." *Id.* The term "spouse" is used in the statute to refer to the abuser even after their death or the couple's divorce. *See* 8 U.S.C. § 1154(a)(1)(A)(iii)(II)(aa)(CC). "This is consistent with ordinary usage." *Bait-It*, 410 F. Supp. 3d at 878. The Court disagrees with Defendants that the use of the word "spouse" conveys Congress's intention.

Instead, a plain reading of the statute requires the opposite conclusion. Unlike other places in the statute, Congress did not include the phrase "during the marriage" to describe the residency requirement. *Compare* 8 U.S.C. § 1154(a)(1)(A)(iii)(II)(dd) *with* § 1154(a)(1)(A)(iii)(I)(bb); *see Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("where Congress includes particular language in one section of a statute but omits it in another of the same Act, it is generally presumed that Congress acts intentional and purposely in the disparate inclusion or exclusion." (internal quotations and alterations omitted)). And Congress used the

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 12

present-perfect tense—"has resided"—which denotes "an event occurring at an indefinite past time ('she has been to Rome')." *See Padilla-Romero v. Holder*, 611 F.3d 1011, 1013 (9th Cir. 2010). Taken together, this Court agrees that "Congress omitted any temporal restriction on the residency requirement." *Bait-It*, 410 F. Supp. 3d at 879.

And this is generally supported by the accompanying regulations, which list the same eligibility requirements as the statute. 8 C.F.R. § 204.2(c)(1). They also state that the petitioner is "not required to be living with the abuser when the petition is filed, but he or she must have resided with the abuser in the United States *in the past*." 8 C.F.R. § 204.2(c)(1)(v) (emphasis added); *but see* 62 Fed. Reg. 60769, 60770 (Nov. 13, 1997) (A petitioner must show "evidence that, during the qualifying relationship, the petitioner and abuser resided together"). Not only does the regulation itself not specify a specific temporal period, it uses the word "abuser," rather than "spouse," suggesting that they need not reside together during the marriage. *See id.*

At bottom, the statute is clear. Unlike the abuse requirement, the residency requirement does not require the petition and the spouse to live together during the marriage. Because Plaintiff resided with Chris at some point before she filed her petition, Plaintiff has thus stated a claim that the AAO's denial of her petition was arbitrary and capricious.

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 13

C.  *Nunc Pro Tunc*

Finally, Defendants argue that Plaintiff's remarriage in 2016 renders her ineligible for the relief she seeks. ECF No. 22 at 8–9 (citing USCIS, Questions and Answers: Battered Spouses, Children and Parents Under the Violence Against Women Act (VAWA), *at* https://www.uscis.gov/humanitarian/battered-spouse-children-and-parents/questionsand-answers-battered-spouses-children-and-parents-under-the-violence-againstwomen-act ("Your Form I-360 will be denied if you re-marry prior to the approval of the Form I-360. Remarriage after the Form I-360 has been approved will not affect the validity of the petition."); *Delmas v. Gonzales*, 422 F. Supp. 2d 1299 (S.D. Fla. 2005); 61 Fed. Reg. 13061, 13063 (Mar. 26, 1996). This Court need not decide this issue here. Upon any eventual remand, the AAO may consider Plaintiff's remarriage, as well as her argument that she is entitled to consideration *nunc pro tunc*, and determine the issue as it sees fit. *See, e.g.*, *Maniulit v. Majorkas*, 3:12-cv-04501-JCS, 2012 WL 5471142, at *4–5 (N.D. Cal. Nov. 9, 2012) (leaving the issue of *nunc pro tunc* relief for the USCIS to decide on remand).

//

//

//

//

ORDER DENYING UNITED STATES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – 14

Accordingly, **IT IS HEREBY ORDERED**:

The United States' Motion to Dismiss, **ECF No. 22**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 7th day of June 2021.

*[signature]*
SALVADOR MENDOZA, JR.
United States District Judge